IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

YALOBUSHA COUNTY, MISSISSIPPI; et al.                          PLAINTIFFS

v.                                          CIVIL ACTION NO. 3:19-cv-00043-GHD-JMV

ENPRO INDUSTRIES, INC; SAMUEL
G. WILLIAMSON; et al.                                          DEFENDANTS

## MEMORANDUM OPINION DENYING PLAINTIFFS' MOTION TO REMAND

Presently before the Court is the Plaintiffs' motion to remand this matter to state court. Upon due consideration, the Court finds that the motion should be denied.

### *I.  Factual and Procedural Background*

On January 31, 2019, the Plaintiffs filed a complaint in the Circuit Court of Yalobusha County, Mississippi, alleging that the Defendants polluted the environment in Water Valley, Mississippi, with trichloroethylene ("TCE"), and then have failed to remediate the pollution. The Plaintiffs assert claims for negligence, nuisance, trespass, fraud, and intentional or negligent infliction of emotional distress against the Defendants.

The Plaintiffs allege that from 1973 through 1987, the Defendants polluted the environment in Water Valley with TCE from an industrial facility, and that the pollution resulted in a TCE-contaminated groundwater plume that impacts over 40 acres of land owned by the Plaintiffs as well as Plaintiff-owned buildings contained on that land, including the Yalobusha General Hospital and Nursing Home, the Yalobusha County Health Department, the Yalobusha County Jail, the Yalobusha Health Services Adult Day Care building, and maintenance and other buildings. The Plaintiffs further aver that the Defendants have breached their duty to remediate the contamination.

On March 1, 2019, the Defendants timely removed this case to this Court on the basis of diversity jurisdiction and filed an answer and affirmative defenses; in addition, Defendant

1

Williamson filed a motion to dismiss, seeking to have the court dismiss the claims pending against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On April 1, 2019, Plaintiffs filed the present motion to remand the case to state court. The matter is now fully-briefed and ripe for review.

## *II.   Standard of Review*

Federal courts are courts of limited jurisdiction. *Epps v. Bexar–Medina–Atascosa Cnties. Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982). Federal diversity jurisdiction, which is the basis upon which the Defendants removed the case *sub judice*, requires complete diversity between all plaintiffs and all defendants and an amount in controversy that exceeds $75,000. *See* 28 U.S.C. § 1332(a). The statute that governs removal of actions pending in state court provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

A court will find that a plaintiff has improperly joined an in-state defendant in order to negate or prevent complete diversity when "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). To determine whether a defendant is improperly joined, the district "court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* If "a court determines that a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without prejudice." *Int'l Energy*

2

*Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016); *Probasco v. Wal-Mart Stores Texas, L.L.C.*, No. 18-50187, 2019 WL 1323986, at *1 (5th Cir. Mar. 22, 2019).

"Improper joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (citing *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (internal quotations and alteration omitted)). Only the second situation is an issue in this case. The applicable test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Davidson*, 819 F.3d at 765 (citing *Smallwood*, 385 F.3d at 573). The burden to show improper joinder rests on the removing party and "[t]he burden of persuasion on those who claim [improper] joinder is a heavy one." *Davidson*, 819 F.3d at 765 (citing *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)).

With that in mind, the Court views "all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff" and resolves "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor. *Davidson*, 819 F.3d at 765. It "is insufficient that there be a mere theoretical possibility of recovery; to the contrary, there must at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." *Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 692–93 (N.D. Miss. 2004) (citing *Travis*, 326 F.3d at 648; *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 386 (5th Cir. 2000) (internal quotations omitted)).

### III. *Analysis and Discussion*

The Plaintiffs contend that removal of this action is not appropriate because there is lack of complete diversity of citizenship between the parties.[1] It is undisputed that complete diversity exists between the Plaintiffs and all Defendants other than Williamson. The Plaintiffs contend that Williamson's presence as a Defendant destroys complete diversity, as both the Plaintiffs and Williamson are citizens of Mississippi. Plaintiffs maintain that Williamson is a proper party to this case against whom they have alleged cognizable causes of action and that removal is thus improper.

Defendants argue that Williamson was improperly joined in order to destroy diversity jurisdiction and that Williamson's citizenship should be disregarded in the diversity jurisdiction determination. Defendants further argue that the Plaintiffs are attempting to impose liability upon Williamson merely because he was, at one point, the Environmental/Safety Director for the subject facility, and that liability cannot be imposed upon him solely for this reason.[2] Therefore, Defendants argue that removal is proper.

The Court now turns to the specific allegations in the Plaintiffs' complaint against Williamson. Plaintiffs allege that Williamson, as the Environmental/Safety Director of the Defendants' predecessor corporation(s) between 1995 and 2002, "was responsible for managing, supervising, and overseeing [the company's] environmental performance and compliance" and

---

[1] The Plaintiffs do not dispute that the requisite jurisdictional amount in controversy is met. On the face of the Plaintiffs' complaint, they request relief far in excess of $75,000, including a request for damages for loss of, or diminution in, the value of land — Plaintiffs claim that soil remediation is required on over forty acres of land, and that the required remediation will cost approximately $102,941.00 per acre, itself a claim for damages in excess of $4,000,000. *See* Amd. Compl. [Doc. No. 3] at p. 29, ¶¶ 75, 77.

[2] The law of the forum state — in this case, Mississippi — governs the substantive issues in this diversity case. *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018).

that he "was vested with the obligation and duty to ensure that [the company], directly or through its retained environmental contractors, exercised diligence and due care with regard to all remedial actions needed or undertaken." Pl.'s Amended Compl. [Doc. No. 3] at ¶ 37. Plaintiffs further aver that Williamson had the "authority and responsibility . . . to enforce and ensure the environmental performance and compliance of the [facility], including the authority and responsibility to enforce the scope of soil remediation work which the State of Mississippi approved and required on the [facility's] premises." *Id.* at ¶ 40.

Beyond Williamson's job title, Plaintiffs further point specifically to a September 26, 1995, telephone call to support their claims. During the subject call, in which an official from the Mississippi Department of Environmental Quality ("MDEQ"), Robert Huckaby, called the Water Valley facility to check on the status of the facility's soil remediation project related to the pollution, Williamson informed Huckaby that the facility was "not using thermal desorption" but instead was "aerating soil by running it over with [a] backhoe and tossing it in [the] air," to which Huckaby replied "We did not approve that method. Need to get thermal desorption unit to site and remediate the approved way." Williamson then informed Huckaby that he would have to get the facility's project officer, Don Townsend, who was in charge of the remediation, to call Huckaby back. Townsend did then call Huckaby back and "assured [Huckaby] that the tossing of soil would stop immediately" and that the facility would "bring [a] thermal desorption unit for any soil that is above 1 ppm." Plaintiffs argue that Williamson's telephonic statement regarding the status of the remediation reflects his knowledge of the remediation activities and that deviation from the approved plan had occurred. In short, therefore, the Plaintiffs aver that they joined Williamson in this action because, due to his employment position, his alleged knowledge of deviations in the remediation plan, and his responsibility to ensure environmental compliance, he had the duty to

5

ensure that the facility complied with MDEQ's soil remediation requirements, and that he breached that duty, which subjects him to potential individual liability.

Defendants argue that apart from bare legal conclusions, which cannot serve to state a claim under *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 551 (2007), Plaintiffs' sole allegations against Williamson are (1) that he worked in various capacities at the subject facility, including for a time as Environmental/Safety Director (Amd. Complaint [Doc. No. 3] at ¶ 37); (2) that the contractor hired to treat contaminated soil at the plant deviated from the approved scope of work by not using "thermal desorption," but instead aerated the soil by running over it with a backhoe and tossing it in the air, with the knowledge and acquiescence of Williamson (Amd. Complaint [Doc. No. 3] at ¶ 40); and (3) that Williamson's alleged conduct constitutes a breach of the duty to remediate, subjecting him to individual liability to the Plaintiffs (Amd. Complaint [Doc. No. 3] at ¶ 41). Defendants argue that these allegations fail to state a claim against Williamson and that remand is therefore inappropriate.

The Defendants bear the heavy burden of demonstrating that there is no possibility of recovery against Williamson. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). The Court finds that the Defendants have met their burden. The Plaintiffs' allegations against Williamson are based entirely on his job title and the content of a single phone call. Neither is sufficient to constitute a reasonable basis for the court to predict that the Plaintiffs might be able to recover against Williamson.

First, the Plaintiffs' allegations regarding Williamson's job title, and their attempt to stretch the fact that he held that title into a basis for recovery, fall short of constituting a sufficient basis for him to face potential personal liability — as the Mississippi Supreme Court has held, a job title alone does not substitute for the "direct, personal participation in the tort" that is necessary in order

6

to impose liability on a corporate employee. *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993). As that Court further explained in *Howard v. Estate of Harper*, 947 So. 2d 854 (Miss. 2006), a case that involved two nursing home patients who died and a subsequent suit that named both the nursing home itself as well as the nursing home's administrator and license holder as defendants, while the nursing home itself owed the patients a duty and might face liability, neither the administrator nor the licensee could be held personally liable in the absence of statutory law or case law expanding the nursing home's duty to include the administrator or licensee, and that any such expansion "would be duplicative of the duty already owed by the nursing home" itself. *Howard*, 947 So. 2d at 858. The situation in the case *sub judice* is analogous — Plaintiffs have submitted no statutory or case law that expands the corporate Defendants' duty and holds that liability is appropriate on an individual employee defendant under the circumstances present in this case.

Second, the subject phone call offers Plaintiffs no avenue of relief and no path to recovery against Williamson. While the Plaintiffs claim that the content of the call, as recorded by the MDEQ official who was on the call, reflects Williamson's knowledge of the remediation and his knowledge that the remediation plan was not being followed, a reading of the notes regarding the call demonstrate that, if anything, Williamson's statements demonstrates that he was <u>not</u> overseeing the remediation and was merely relaying information that any observer at the facility could see in plain view. Specifically, as noted above, after Williamson relayed his observations to MDEQ regarding the contractor's activities in relation to the remediation, which took place in plain view, and MDEQ stated that the method being used was not approved, Williamson replied that he would have to get the person in charge of the remediation (project manager Don Townsend) to respond to MDEQ. In other words, Plaintiffs are attempting to impose liability upon Williamson

7

(but not Townsend, who is not a Mississippi resident and is not a named Defendant) for his knowledge of the contractor's activities at the facility, which is knowledge that the Plaintiffs admit was possessed by "other plant personnel" as well. Plaintiffs' Memo. ISO Motion to Remand [Doc. No. 16] at p. 4. The Mississippi Supreme Court, however, has made clear that such knowledge alone is never sufficient to raise a duty or impose liability. *Jones v. James Reeves Contractors, Inc.*, 701 So. 2d 774, 784 (Miss. 1997) (affirming summary judgment in favor of architect who knew soil conditions were hazardous but provided no warning prior to ditch cave-in, which killed several workers in the ditch, and stating that "the fact that an actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action"); *Coho Resources, Inc. v. McCarthy*, 829 So. 2d 1, 13 (Miss. 2002).

Accordingly, the court finds that the fact that Williamson participated in the subject telephone conversation, even combined with the fact that his job title at the time was Environmental/Safety Director of the subject facility, is not sufficient to permit a finding that liability may be imposed upon him. Beyond those two basic allegations, Plaintiffs have not alleged that Williamson had sufficient responsibility over the soil remediation project to potentially hold him individually liable (and the Defendants have in any event submitted evidence demonstrating that Williamson did not have responsibility over the project — *see* Doc. No. 1-7); inferences from the nomenclature of a job title, even combined with the subject phone call, are simply not sufficient. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 307 (5th Cir 2005); *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 69 (5th Cir. 2010).

In conclusion, on a remand motion, it is not proper for the Court to weigh evidence on the merits. Rather, as stated above, the Court must look to the allegations of the complaint and may perform a summary inquiry limited to identifying undisputed facts that preclude recovery against

8

the subject defendant. In viewing the complaint and the summary-type evidence in the case *sub judice*, the Court finds that the Defendants have shown that the Plaintiffs have no reasonable possibility of recovery against the Defendant Samuel G. Williamson, and thus the Defendants have shown that Williamson was improperly joined. Therefore, removal jurisdiction is proper and remand is not appropriate.

### *IV.  Conclusion*

In sum, the Plaintiffs' motion to remand to state court [Doc. No. 15] is DENIED; the Defendant Samuel G. Williamson's motion to dismiss [Doc. No. 10] is GRANTED; and the claims pending against Williamson are DISMISSED WITHOUT PREJUDICE.

An order in accordance with this opinion shall issue this day.

THIS, the 24 day of June, 2019.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE