IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

YALOBUSHA COUNTY, MISSISSIPPI, by and           PLAINTIFFS
through THE BOARD OF SUPERVISORS OF
YALOBUSHA COUNTY, MISSISSIPPI; and
THE BOARD OF TRUSTEES OF YALOBUSHA
GENERAL HOSPITAL OF YALOBUSHA COUNTY,
MISSISSIPPI

Versus                            Civil Action No. 3:19-cv-43-GHD-JMV

ENPRO INDUSTRIES, INC.; ENPRO HOLDINGS
INC.; and GOODRICH CORPORATION           DEFENDANTS

# SECOND AMENDED COMPLAINT

## [DEMAND FOR JURY TRIAL]

_____

### Preliminary Statement
_____

From 1973 through 1987, the Holley Automotive Division of Colt Industries, Inc.

("Colt"), polluted the environment in Water Valley, Mississippi with trichloroethylene ("TCE"),

a known hazardous substance and carcinogen.   Colt's repeated release and discharge of TCE

into the environment at the Holley Automotive Division plant ("Holley plant") contaminated the

soil and groundwater, and the contamination spread.   A groundwater plume, contaminated with

TCE, emanates from the premises of the Holley plant and underlies a surface area of

approximately 340 acres that lie to the north and northwest of the plant.   The plume impacts

twenty-eight (28) residences and eleven (11) commercial or governmental buildings, including

but not limited to a hospital, a nursing home, a child daycare center, medical offices, and other businesses.

The releases and discharges of TCE at the Holley plant by Colt employees were grossly negligent, reckless, and often, intentional, and the releases occurred despite Colt's knowledge that the chemical it was dumping was a hazardous substance which was dangerous to both human health and the environment. But Colt did not alter its conduct, because it wrongfully viewed the absence of state governmental regulation as a license to pollute the environment with a known hazardous substance. In all respects, Colt's acts and omissions were consistent with its view of "Mississippi" as "a dumping ground for hazardous wastes."[1]

Over thirty years ago, Colt was warned that its pollution on the Holley plant premises presented a "reasonable likelihood of off-site migration of contaminated groundwater"[2] and had "the potential to contaminate the downgradient environment *for decades*,"[3] but Colt, and its corporate successors EnPro Industries, Inc.; EnPro Holdings, Inc.; and Goodrich Corporation, have consistently breached their duties to remediate the contamination. These failures of Colt and its successors to remediate were grossly negligent, reckless, and again, often intentional. Despite the Defendants' knowledge of soil and groundwater contamination under the Holley plant building, the Defendants have never undertaken any action to remediate it. And, when the Defendants undertook some remediation of contaminated soil on the Holley plant premises, they intentionally deviated from the scope of work which the State of Mississippi required for the

---

1  Exhibit "1" - Colt Industries, Inc. Memorandum from S. Seabright to E. McClellan, 2/20/1980. Exhibit "1" and all other exhibits referenced in this Second Amended Complaint refer to the exhibit filed in this action with the original Complaint, copies of which exhibits have been served upon the Defendants.
2  Exhibit "2" – Dames & Moore letter to Holley Automotive, 1/4/1989, p. 4463.
3  Exhibit "3" – Dames & Moore *Interim Status Report,* 11/1/1991, p. 9.

remediation, and later fraudulently represented to the State of Mississippi that they had fully complied with the required scope of work.

Moreover, the only groundwater remediation which the Defendants undertook in the course of a thirty-year remedial history was placement of recovery wells at the leading edge of an already large plume, with the goal of stemming further expansion of the plume. That action failed because the recovery wells malfunctioned and were shut down for over ten (10) years due to the Defendants' refusal to maintain and repair the same. Notably though, the Defendants have never taken any action to clean or remediate the contaminated groundwater on Plaintiffs' properties, which lie between the Holley plant and the "leading edge" of the plume.

Plaintiffs, as owners of the surface of their land and the soil underneath, have been impacted and harmed by the Defendants' grossly negligent and intentional acts and omissions. Plaintiffs' real property is contaminated due to the Defendants' pollution of the environment and because of Defendants' failure to remediate the contamination they caused. In addition, the Defendants' conduct subjects the Plaintiffs, and all persons who use, inhabit or occupy the buildings on Plaintiffs' property, to the risk of vapor intrusion, *i.e.,* the potential intrusion into their buildings of TCE vapor which volatilizes from the TCE-contaminated groundwater Consequently, Plaintiffs bring this action against the Defendants to recover for the diminution in the value of their real properties impacted by contamination, for the infliction of emotional distress, for any special damages which plaintiffs may sustain in the event that any vapor intrusion, for punitive damages and attorneys' fees, and for all other damages which Plaintiffs are entitled to recover under law.

**Legal Basis of Claims**

1.     Plaintiffs bring this action exclusively under Mississippi law and not pursuant to any federal law.   Plaintiffs seek no substantive relief based on any federal law.

**Parties**

2.     Plaintiff, Yalobusha County, Mississippi, is a political subdivision of the State of Mississippi which brings and appears in this action by and through the duly elected Board of Supervisors of Yalobusha County, Mississippi, which has authority to act on behalf of Yalobusha County pursuant to *Miss. Code Ann. § 19-3-41*.   Plaintiff is a governmental entity of the State of Mississippi, which is domiciled in Mississippi and which owns tracts of land of approximately 12.795 acres and 5 acres that are situated within the contamination plume, including various buildings located thereon.   The used, inhabited or occupied buildings contained on such land include the Yalobusha General Hospital and Nursing Home, the Yalobusha County Health Department, a maintenance building, and the Yalobusha County Jail. The reasonable aggregate market value of the real property and buildings owned by Yalobusha County, Mississippi which have been impacted by the contamination plume is $11,740,000.00.

3.     Plaintiff, the Board of Trustees of Yalobusha General Hospital of Yalobusha County, Mississippi ("Board of Trustees"), is a political subdivision of the State of Mississippi and Yalobusha County, Mississippi.   The Board of Trustees is appointed by the Board of Supervisors of Yalobusha County, Mississippi pursuant to *Miss. Code Ann. § 41-13-29,* but the Board of Trustees is authorized to file this suit in its own name pursuant to *Miss. Code Ann. § 41-13-35.*   The Board of Trustees, which is a governmental entity, is domiciled in Mississippi and owns a tract of land of approximately 30.765 acres which is situated within the

4

contamination plume, including various buildings located thereon. The used, inhabited or occupied buildings contained on such land include the Cotton Candy Day Care, the Yalobusha Health Services Adult Day Care, the Odom Rural Health Clinic, a Visitor's Residence/Sleep Clinic, the "Old" Department of Human Services Building, and a maintenance building. The reasonable aggregate market value of the real property and buildings owned by the Board of Trustees which have been impacted by the contamination plume is $4,100,000.00.

4.      EnPro Industries, Inc. ("EnPro Industries"), named as a Defendant herein, is a corporation organized under the laws of the state of North Carolina, which is domiciled in North Carolina and which has its principal place of business at 5605 Carnegie Blvd., Suite 500, Charlotte, North Carolina 28209-4674. EnPro Industries may be served with process through service upon its registered agent, C.T. Corporation System, 150 Fayetteville St., Box 1011, Raleigh, North Carolina 27601-2957. Through one or more corporate transactions, the details of which are not fully known by the Plaintiffs as of this date, EnPro Industries expressly assumed and acquired the environmental liabilities which are the subject of this action.

5.      EnPro Holdings Inc. ("EnPro Holdings"), named as a Defendant herein, is a corporation organized under the laws of the state of North Carolina, which is domiciled in North Carolina and which has its principal place of business at 5605 Carnegie Blvd., Suite 500, Charlotte, North Carolina 28209-4674. EnPro Holdings may be served with process through service upon its registered agent, C.T. Corporation System, 150 Fayetteville St., Box 1011, Raleigh, North Carolina 27601-2957. Through one or more corporate transactions, the details of which are not fully known by the Plaintiffs as of this date, EnPro Holdings expressly assumed or otherwise acquired the environmental liabilities which are the subject of this action. On

5

information and belief, Colt Industries, Inc. changed its corporate name to Coltec Industries, Inc. ("Coltec"), and Coltec continued to own and operate the Holley plant until approximately 1996. On or about December 31, 2016, Coltec merged into OldCo LLC ("OldCo"), with OldCo as the surviving entity, and hence, OldCo acquired by operation of law the environmental liabilities which are the subject of this action. Also on December 31, 2016, OldCo and EnPro Holdings entered into an agreement by which certain assets of OldCo were transferred to EnPro Holdings and by which EnPro Holdings contractually assumed the environmental liabilities which are the subject of this action.

6. Goodrich Corporation ("Goodrich"), named as a Defendant herein, is a corporation organized under the laws of the state of New York, which is domiciled in both New York and North Carolina and which has its principal place of business at 2730 W. Tyvola Road, Four Coliseum Centre, Charlotte, North Carolina 28217. Goodrich may be served with process through service upon its registered agent, C.T. Corporation System, 150 Fayetteville St., Box 1011, Raleigh, North Carolina 27601-2957. On information and belief, Goodrich (formerly known as "The B. F. Goodrich Company") acquired the environmental liabilities which are the subject of this action through corporate transactions or by operation of law. Alternatively, Goodrich is the corporate parent of EnPro Industries and EnPro Holdings, and in the event that either subsidiary or related corporation is insufficiently capitalized in light of their foreseeable environmental liabilities, then the corporate veil of Goodrich should be pierced for the imposition on Goodrich of the environmental liabilities which are the subject of this action.

**Jurisdiction and Venue**

7. This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. §

6

1332 in that (a) there is complete diversity of citizenship between the Plaintiff and all Defendants, and (b) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.      This Court has personal jurisdiction over the Defendants EnPro Industries, Inc.; EnPro Holdings, Inc., and Goodrich Corporation (collectively the "EnPro Defendants") in that they (a) committed torts in whole or part within the State of Mississippi by creating or releasing the pollution which is the subject of this action and/or by failing to contain and remediate the same; (b) did business within the State of Mississippi and were formerly admitted to do business within the State of Mississippi; and/or (c) subjected themselves to the jurisdiction of this Court by their assumption or acquisition of the environmental liabilities which are the subject of this action, either contractually or by operation of law.

9.      Venue is appropriate in the district and division asserted as the acts and damages complained of herein occurred in whole or in part in the Second Judicial District of Yalobusha County, Mississippi which lies the Oxford Division of the Northern District of Mississippi.

**Underlying Facts – Use and Disposal of TCE**

10.     The Holley plant which is the source of the contamination complained of herein is located at 600 Highway 32, Water Valley, Mississippi.   At present the facility is occupied by Borg Warner Emissions Systems LLC which acquired the facility in 1996, long after Colt and its employees released and discharged hazardous TCE into the environment and after Coltec and its employees failed to adequately clean or remediate such contamination.   As a result of the acts and omissions of Colt and Coltec, for which the EnPro Defendants are responsible, the soil on

7

the former Holley plant premises remains contaminated and a plume of contaminated groundwater emanates therefrom to the north and northwest and toward the downtown business district of the City of Water Valley. The leading edge of the plume has reached, if not crossed, Otoucalofa Creek. The dimensions and area occupied by the contamination plume have continued to expand since the year 2006, when the plume was measured at 3,900 feet long and 2,100 feet wide.[4] The contamination plume now underlies a surface area of approximately 340 acres.

11. The Holley Automotive Division of Colt acquired the plant building and premises in November of 1972 and began the manufacture of automotive components, including carburetors and fuel injection systems. Colt changed its name to Coltec Industries, Inc. in 1990, but it continued manufacturing operations at the plant until 1996 when Coltec sold assets including the Holley plant to BorgWarner. As part of such transaction, Coltec retained the environmental liabilities related to the Holley plant, which the EnPro Defendants inherited by express assumption or operation of law.

12. Colt was the first entity to use TCE, a solvent or degreasing agent, at the Holley plant. From February of 1973 through January of 1987, Colt purchased and used more than 80,000 gallons[5] of TCE in its industrial operations at the Holley plant. In February of 1973, a degreasing machine (the "big degreaser") which Colt purchased from Detrex Chemical Industries Inc ("Detrex") was installed at the Holley plant. The big degreaser was a self-contained unit which cleaned metal parts *via* immersion and vapor as the parts, contained in wire

---

4 Exhibit "4" – Miss. Dept. Environmental Quality Memorandum, 12/6/2006.
5 Exhibit "6" – Colt letter 2/28/1989.

baskets, traveled through the machine. Detrex also sold and supplied Colt with the TCE solvent used in the big degreaser. *See,* Exhibit "5," Colt letter 10/21/1988.

13. Colt maintained two above-ground storage tanks located outside the southern wall of the Holley plant building – one tank having a capacity of 4,000 gallons and the other tank with a capacity of 1,000 gallons. Unused, or virgin, TCE delivered by Detrex was pumped into the 4,000 gallon storage tank. Used, or spent, TCE was pumped into the 1,000 gallon storage tank, which was frequently used for storage of spent TCE while the big degreaser was being cleaned or undergoing periodic maintenance. *See,* Exhibit "5," Colt letter 10/21/1988.

14. The big degreaser was located in the center of the western half of the Holley plant building, next to the plant's cafeteria, and was connected to the 4000 gallon virgin TCE tank and the 1000 gallon spent TCE tank by underground piping. A diagram depicting the locations of the big degreaser, TCE tanks, and associated piping is attached hereto as Exhibit "13."

15. In March of 1981 Colt replaced the original big degreaser with a new degreaser of similar size purchased from Detrex and installed throughout the plant several smaller degreasers (called "ultrasonic vapor degreasers") which Colt also purchased from Detrex. Colt continued to utilize TCE as the solvent or degreasing agent in all degreasers installed at the Holley plant until approximately January 1987. *See,* Exhibit "5," Colt letter 10/21/1988.

16. Colt's use of TCE for degreasing produced two forms of TCE waste – spent TCE in liquid form, and a semi-solid sludge removed from a TCE still (known as "still bottoms." But the Holley plant had limited storage capacity for TCE wastes. TCE still bottoms were drained from the still into 55 gallon drums, for purposes of storage and disposal, but the 1000 gallon above-ground TCE tank was Colts' only vessel for the storage of spent TCE in liquid form. *See,*

Exhibit "5," Colt letter 10/21/1998.   All such TCE-laden wastes were hazardous in nature.

17.     On information and belief, Detrex supplied Colt with an operational manual for the big degreaser which also contained warnings pertinent to the use of TCE and other degreasing solvents.   Such manual warned Colt that TCE and other degreasing agents were dangerous and hazardous chemicals which could cause narcosis and even death if breathed by humans in sufficient concentrations.   An exemplar of such manual, authored by Detrex, is attached hereto as Exhibit "7."   Numerous employees at the Holley plant who encountered TCE and TCE vapor, in sufficient concentrations, experienced difficulty breathing, dizziness, and other sensory impairments.

18.     In approximately 1974, to increase the capacity in the 1000 gallon tank for inflows of spent TCE from the big degreaser, one or more Colt employees, acting on instructions from their superiors at Colt, intentionally activated the valve on the 1000 gallon tank and released the spent TCE in the tank into the environment.   The TCE discharged therefrom flowed into a drainage ditch which ran parallel to the southern wall of the Holley plant building, and the chemical discharge killed approximately twenty (20) turtles in the ditch.   The next day, a Colt employee involved in the release event showed his handiwork – the dead turtles – to   coworkers. On information and belief, this was not the only intentional release of spent TCE from the 1000 gallon tank, since the Holley plant had insufficient capacity for storage of spent TCE generated from the 80,000 gallons of TCE it used from 1973 through 1987.   Nevertheless, as early as 1974, Colt, its managers and employees had actual knowledge that TCE waste was a hazardous substance which, when released into the environment, was dangerous and lethal to aquatic or animal life.

10

19.     To prevent rupture from internal pressure, the 1000 gallon tank used for holding

spent TCE was open or vented at the top.   The tank held some amount of spent TCE at all times,

and excess inflows forced spent TCE to spill from the opening(s) in the tank.   Colt knowingly

allowed such overflows to occur, which were frequent and routine, and the same were witnessed

by numerous Colt employees.   Overflows from the 1000 gallon tank either permeated the

ground or flowed into the drainage ditch running parallel to the southern wall of the Holley plant

building.   With knowledge that such overflows would occur, Colt continued to pump spent TCE

from the big degreaser into the 1000 gallon tank and took no action to stem, guard against, or

prevent the overflows of this hazardous substance into the environment.

20.     The records maintained by Colt employees who worked at the Holley plant

document additional instances of TCE spills and discharges.   A memorandum by Dwain Vinson,

a Colt manager, documented a "big spill of TCE a few days before" a nearby property owner

complained that ditch water from the Holley plant was making her cows sick.[6]  Another Colt

record evidences the occurrence of two TCE spills in or about the year 1978, and the "cutting" of

a TCE pipe in 1984 that resulted in additional TCE discharges.[7]   The same Colt document

indicates that TCE "still bottoms" were dumped or sprayed on the ground for the purpose of

controlling "dust" and "weeds."[8]   Hence, TCE's weed-killing characteristic indicated to Colt

that the chemical was dangerous to plant life as well and further confirmed the chemical's status

as a hazardous substance.

21.     In a December 6, 1993 letter to the Mississippi Department of Environmental

---

6 Exhibit "8" – Handwritten Memorandum by Dwain Vinson of Colt Industries, Inc., 5/20/1988.
7 Exhibit "9" – Colt Memorandum of Hydrogeology Meeting, 3/30/1988.
8 Exhibit "9," supra.

Quality ("MDEQ"), TIWC Environmental Services, Inc. ("TIWC"), an environmental contractor retained by Coltec, confirmed the occurrence of spills of TCE at the Holley plant. The Holley plant experienced "spill(s) of pure phase TCE occurring" after 1976 which "contaminated" the "soil" and "groundwater." TIWC explained that the 1000 gallon TCE storage tank was openly vented to the atmosphere such that it overfilled on "several occasions," although the tank overflowed routinely, on information and belief. In addition, TIWC cited leakage of TCE from the fittings of the fill-piping connected to the TCE storage tank. *See,* Exhibit "10," TIWC Letter to Miss. Dept. Environmental Quality, 12/6/1993. Coltec either authorized TIWC to report such spills to the MDEQ or adopted the truth of the statements made in TIWC's letter, by remaining silent with regard to the spills which TIWC disclosed to the State of Mississippi.

22.     Spent TCE was also generated by the Holley plant's use of the smaller ultrasonic vapor degreasers, several of which were installed throughout the plant. When the TCE therein lost efficacy as a degreaser, Colt employees drained spent TCE from the small degreasers into buckets and dumped the buckets, either into a drain in the plant which ran to drainage ditches outside or into the drainage ditches directly

23.     The big degreaser utilized water for purposes for cooling, and invariably, the cooling water therefrom was contaminated with TCE. Records from the Mississippi Department of Natural Resources ("MDNR") and Colt so indicate. An MDNR memorandum reflecting its prior involvement at Colt in 1973 through 1974 notes that the Holley plant discharged wastewaters from the big degreaser into drainage ditches on the plant property.[9] This finding by the MDNR was later confirmed when Colt admitted, in a 1981 Industrial Waste

---

9 Exhibit "11" – Mississippi Department of Natural Resources Memorandum, 2/27/1989.

Questionnaire, that its wastewater discharges from the Holley plant contained TCE.[10]

24.    Colt found other inventive ways to dispose of the spent TCE for which it lacked sufficient storage capacity.   Colt maintained a "spray" truck, the bed of which housed a tank of approximately 1000 gallon capacity.   In response to the complaints of Colt employees about the inordinate amount of dust in the plant's gravel parking lot, Colt regularly used the spray truck to "known down" the dust.   On multiple occasions, too numerous to count, Colt filled the tank on the spray truck with spent TCE and sprayed this hazardous chemical on the parking lot, resulting in additional and significant discharges of TCE into the environment which were intentional in nature.

25.    Colt recklessly dumped and disposed of spent TCE and TCE still bottoms on the Holley plant premises until approximately April of 1983, when it contracted with an outside vendor for the transport and disposal of TCE waste at an off-premises regulated facility.   *See,* Exhibit "9," supra.   "Manifested" is the parlance which Colt used to refer to waste disposal by outside vendors.   Colt's records confirm that no manifested disposal of TCE occurred until April of 1983, and that over the fourteen (14) years that Colt used TCE at the Holley plant, Colt only manifested approximately 5,775 of the 80,000 gallons of TCE which Colt purchased and used.[11]

### Underlying Facts – Confirmation of Groundwater Contamination

26.    TCE is a hazardous substance and a known carcinogen.   Under Mississippi law, groundwater is considered contaminated with TCE when the concentration of such chemical therein exceeds the value of 5 parts per billion ("ppb").   The value of 5 ppb for TCE is referred

---

10  Exhibit "12" – Industrial Waste Questionnaire, 4/3/1981.
11  Exhibit "14" – Colt Industries, Inc. Memorandum, 2/27/1992.

to as its maximum contaminant level ("MCL").

27.     Colt supplied its workforce at the Holley plant with drinking water from a municipal well located on the plant premises. The municipal well was sourced by groundwater.

28.     In May of 1988, the municipal well used by employees of the Holley plant for drinking water tested positive for TCE at a concentration of 5.2 ppb.   Repeat testing of the well revealed increased concentrations of TCE.[12]   Evidencing its knowledge that TCE was carcinogenic, Colt acted quickly to supply its workforce with an alternative source of drinking water.[13]

29.     Initially, when Colt discovered that its reckless and intentional conduct had contaminated the groundwater with TCE, Colt sought to blame the environmental damage on Ram Tool Company, which occupied the Holley plant before Colt purchased the same in 1972. However, Colt's investigation revealed that Ram Tool Company did not have a degreaser during its operation of the plant and produced no evidence to support any contention of TCE usage by Ram Tool Company.[14]   That Colt, and only Colt, was responsible for TCE contamination at the Holley plant is a fact which Colt management accepted and admitted in their internal communications.[15]

### Underlying Facts – Fraudulent and Negligent Remediation

30.     Before undertaking any remediation of the TCE contamination, Colt, and later Coltec, was warned about the consequences of any failure to exercise diligence and due care.

12  Exhibit "15" – Colt Industries, Inc. Memorandum "Drinking Water Supply/Water Valley," 9/14/1988.
13  Exhibit "15," supra.
14  Exhibit "16" – Memorandum by Don Townsend of Colt Industries, Inc., 6/23/1989.
15  Exhibit "17" – Recorded Meeting of Colt Management, 1/26/1989.

14

31.     Colt's management, in an internal meeting, recognized and appreciated that the contaminated soil at the Holley plant site must be treated; that a TCE contamination source existed underneath the footprint of the Holley plant building; and that TCE contamination of the soil on the plant premises was, in turn, contaminating the groundwater.[16]

32.     Further, the warnings which Colt received from its retained environmental contractor, Dames & Moore, were ominous.   A 1989 letter from Dames & Moore to Colt notes the "reasonable likelihood of off-site migration of contaminated groundwater" from the Holley plant.[17]   The Dames & Moore *Interim Status Report* transmitted to Colt in 1991 warned that any failure to remediate the TCE-contaminated soil on plant premises "has the potential to contaminate the downgradient environment *for decades.*"[18]   And, a subsequent missive from Dames & Moore to Colt in 1992 reiterated the admonition that TCE-contaminated soil left untreated will continue to impact the groundwater.[19]

33.     As evidenced by the fraudulent and negligent manner in which the Defendants undertook remediation, the Defendants cavalierly and recklessly ignored these warnings.

A.     **Fraudulent Soil Remediation**

34.     At all times pertinent hereto, Colt and Coltec acted by and through their managers and employees acting within the course and scope of their employment.

35.     In 1993, at Coltec's request, the State of Mississippi approved a three-year soil remediation project on the Holley plant premises conditioned upon a scope of work submitted to

---

16  Exhibit "17," supra.
17  Exhibit "2," supra.
18  Exhibit "3," supra.
19  Exhibit "18" – Dames & Moore letter to Colt Industries, Inc., 12/11/1992.

15

the MDEQ by Coltec and TIWC, its environmental contractor.

36.     Coltec represented to the MDEQ, and to the United States Environmental Protection Agency ("USEPA"), that all contaminated soil excavated at the Holley plant would be heat treated by use of a process known as "thermal desorption."[20]   A flow chart prepared by TIWC illustrates the manner in which thermal desorption was to be performed:   After excavation, all soils were to be tested for TCE, and those soils in which the TCE concentration exceeded 1 part per million were to be heat treated in a "Thermal Desorption Unit."[21]

37.     Based on such representation, the MDEQ approved the scope of work proposed by Coltec for remediation of the TCE-contaminated soil on the Holley plant premises, and required Coltec to follow such scope of work.   However, TIWC, with the knowledge and acquiescence of Coltec, deviated from the scope of work by failing to heat treat all of the contaminated soil designated for remediation at the Holley plant.   A September 26, 1995 MDEQ telephone record reflects that thermal desorption was not being used.   Instead of heat treating the contaminated soil, TIWC "aerat[ed] [the] soil by running it over with a backhoe and tossing it in [the] air."[22]

38.     TIWC's deviation from the scope of work with the knowledge and acquiescence of Coltec constitutes a breach of duty to remediate by Coltec and by the EnPro Defendants who failed to adequately monitor and supervise TIWC or failed to enforce the required scope of work upon learning of the deviation therefrom.   As a result, contaminated soil on the Holley plant premises was "tossed in the air" rather than heat treated, and the soil contamination remained,

---

20  Exhibit "19" – Coltec letter to United States Environmental Protection Agency, 11/30/1993.
21  Exhibit "20" – TIWC's "Holley Automotive Soil Remediation Process Flow Diagram."
22  Exhibit "21" – MDEQ Record of Telephone Conversation, 9/26/1995.

unabated, on the plant premises as a source of contamination of the groundwater which continually flows through and contaminates the soil on the Plaintiffs' properties, *i.e.,* a continuing trespass.

39.     The scope of soil remediation work which Coltec and TIWC represented that they would follow also required that the soils on the Holley plant premises be excavated to a depth of fourteen (14) feet.[23]   However, 2016 testing of soils on the plant premises which should have been remediated from 1993 to 1996 revaled the same remain saturated with TCE in concentrations significantly higher than 1 part per million and well in excess of TCE's maximum contaminant level of 5 ppb.[24]   On information and belief, Coltec, through TIWC, failed to excavate the contaminated soil to the represented depth, but nonetheless issued a Soil Remediation Report to the State of Mississippi at the conclusion of such work which fraudulently represented that the soil remediation had been completed in compliance with the required scope of work.[25]   On further information and belief, the EnPro Defendants confessed the depth deviation in a private meeting with the MDEQ.

40.     As a direct and proximate result of the negligent and fraudulent soil remediation conducted by Coltec, and its environmental contractor TIWC, the soil of the Holley plant premises remains contaminated with TCE and sources contamination of the groundwater, which continues to flow in its natural course through the soil of Plaintiffs' properties so as to continually contaminate the same.   The acts and omissions of Coltec in such regards constituted

---

23  Exhibits "22" and "23" – Coltec letter to USEPA and MDEQ, 11/30/1993; and TIWC "Soil Remediation Report," p. 5.
24  Exhibit "24" – MiHpt Investigation Workplan, p. 1.
25  Exhibit "23," supra.

breaches of duty, created and/or contributed to a nuisance, and gave rise to a continuing and perpetual trespass which remains unabated.

**B.    Grossly Negligent Groundwater Remediation**

41.    Despite the fact that the Defendants contaminated Plaintiffs' properties, the only groundwater remediation which the Defendants have undertaken in a thirty year remedial history focused on restricting expansion of the groundwater contamination plume, rather than treating the contaminated groundwater which lies between the Holley plant and the leading edge of the plume.   At all times pertinent hereto, neither Colt, Coltec, nor any of the Defendants have taken any action to remediate the contaminated groundwater underlying Plaintiffs' properties.

42.    The groundwater treatment system which Colt and Coltec installed, and which was only intended to be an "interim" measure, only placed recovery wells at the leading edge, or what was then the northernmost margin, of the groundwater contamination plume.   No recovery wells were placed, and no other treatment was instituted, between the contamination sources on the Holley plant premises and the leading edge of the plume, leaving untreated the contaminated groundwater on the Plaintiffs' properties which lie between the plant and the northernmost points of the plume.

43.    Colt represented to the MDEQ that the recovery wells would be "inspected daily [for] preventative maintenance," and that "[m]ost all repairs … can be completed within a thirty to sixty-minute time span."[26]

44.    The recovery wells, however, experienced problems due to "iron fouling," and rather than diligently maintain and repair the wells, as promised, the EnPro Defendants allowed

---

[26] Exhibit "25" – Groundwater Treatment System report by Colt Industries, Inc., 1990.

the wells to fail and remain "off-line."   Without the approval or consent of the MDEQ, the recovery wells remained inoperable – or as the EnPro Defendants describe it, "shut down for repairs" – from at least the year 2008 through the year 2017, a period of almost ten (10) years.[27] During such period of time, the EnPro Defendants ignored the MDEQ's "verbal and written requests to bring the system back on-line."[28]

45.     The groundwater remediation plan devised by Colt and Coltec, and only sporadically executed by the EnPro Defendants, failed due to the Defendants' gross negligence. Moreover, even when "on-Line," the recovery well system provided no benefit to Plaintiffs whose properties were left untreated and un-remediated by the Defendants.

C.     **Consequences of Defendants' Contamination and Failures to Remediate**

46.     Defendants' acts and omissions which contaminated the environment and their failure to remediate the contamination allowed the contaminated groundwater plume to continue to exist, to continue to be sourced, and to continue to flow through the soil of the Plaintiffs properties so as to continually and repeatedly contaminate the same.

47.     From 2002 through 2016, the EnPro Defendants have monitored TCE concentrations within the groundwater plume emanating from the Holley plant premises.   The majority of monitoring wells so tested revealed concentrations of TCE which significantly exceed its maximum contaminant level of 5 ppb.   In addition, test results from these wells indicated the presence of other volatile organic compounds which are degradation products of TCE, such as vinyl chloride, which is equally, if not more, carcinogenic than TCE.

---

27  Exhibit "26" – Environmental Correspondence from EnPro.
28  Exhibit "27" – MDEQ letter to EnPro, 8/21/2015.

19

48.     As of September 21, 2016 the TCE concentration in the groundwater underneath the Yalobusha County Hospital and Nursing Home, which houses, treats and administers to the old, sick and infirm who are more susceptible to exposure to environmental contamination, was 504 times the maximum contamination level for TCE in water.

49.     Thirty years of abject failure in the Defendants' remedial obligations have wrought lasting and irreparable harm.   The air inside the Holley plant building, now occupied by a BorgWarner workforce, is contaminated with TCE vapor above both USEPA screening and action levels.[29]  Plaintiffs, who use, inhabit and occupy buildings above the TCE groundwater plume, are also exposed to a same risk of TCE vapor intrusion.

**Claims for Legal Relief**

50.     As the corporate successors-in-interest of Colt Industries, Inc. and/or Coltec Industries, Inc., the Defendants EnPro Holdings, Inc., EnPro Industries, Inc., and Goodrich Corporation (collectively referred to as "EnPro Defendants") are liable, vicariously or otherwise, for all acts and omissions of Colt and Coltec, including all acts and omissions of the managers and/or employees of Colt and Coltec acting within the course and scope of their employment.

**Claim for Intentional and/or Negligent Conduct**

51.     The EnPro Defendants are liable for all harm which they, as reasonably prudent persons, should have anticipated to be the natural and probable consequence of their acts and/or omissions.   Such obligation included the duties under Mississippi law to exercise reasonable care with regard to their acts and/or omissions, when it was foreseeable to the Defendants that

---

29  Exhibit "28" – BorgWarner letter "To All Employees," 1/22/2017 (warning of TCE vapor intrusion resulting in TCE concentrations inside the BorgWarner facility in excess of USEPA air screening and action levels).

their acts and/or omissions would cause harm to others. Under the particular facts of this action, the Defendants had duties (a) to ensure the safe disposal of their hazardous wastes, or contaminated media, which was within their possession, authority or control; (b) to remove and adequately remediate contamination and/or hazardous wastes which were under their possession, authority or control; (c) to protect others against the foreseeable hazards presented by contamination or hazardous wastes which were under their possession, authority, or control; and (d) to correct or remediate conditions on land which are causing damage to the property of others. In all such regards, the Defendants were obligated to exercise reasonable care.

52. The EnPro Defendants were duly and adequately warned of the risks which contamination on the Holley plant premises presented to off-site property owners, and under law, were not allowed to sit idly by in the face of the known danger which contamination on the premises of the Holley plant presented to others. Such knowledge on the part of the EnPro Defendants, coupled with their possession, authority and control over the Holley plant premises and their ability to act to obviate or lessen the risk of harm to off-site property owners, imposed on the EnPro Defendants a duty to act, and their failures to exercise reasonable care under such circumstances constituted breaches of such duty.

53. The EnPro Defendants, acting through Colt and Coltec and their respective managers and employees, breached the aforesaid duties by releasing and discharging TCE into the environment on the Holley plant premises. The acts and/or omissions of such managers and employees resulting in the discharge and release of TCE were reckless and grossly negligent, and frequently, intentional in nature. Said managers and employees knew and appreciated that TCE was a hazardous substance, and knew and appreciated that TCE was dangerous and harmful to

21

human health, animal life, and the environment. Such releases of TCE, for which the EnPro Defendants are responsible, breached the duty of reasonable care imposed on such Defendants under Mississippi law.

54. The EnPro Defendants, acting through Colt and Coltec and their respective managers and employees, breached the aforesaid duties by failing, in a manner which was intentional, reckless and/or grossly negligent, to appropriately and adequately remediate the contamination on the Holley plant premises which was under their possession, authority, and control. The Defendants knew and appreciated that contamination of the soil on the Holley plant premises would, in turn, contaminate the groundwater; that contaminated groundwater would flow off of the Holley plant premises so as to contaminate the soil on the properties of off-site owners; and that the groundwater contamination impacting off-site property owners would continue and increase in concentration until such time that the soils on the Holley plant premises, the source of such contamination, were appropriately and adequately cleaned and remediated. Notwithstanding such knowledge, the EnPro Defendants and Defendant Williams breached their duties to remediate by approving, authorizing or acquiescing in a fraudulent soil remediation which deviated from the scope of work to be performed on the Holley plant premises, and by failing to act in the premises to follow or enforce the scope of work required for soil remediation on the Holley plant premises. Such breaches of the duty of reasonable care by the Defendants allowed contaminants to remain on the Holley plant premises, and the continued presence of such substances on the Holley plant premises have caused or contributed to the contamination which continuously and repeatedly flows through the soils of off-site property owners, including the Plaintiffs.

22

55.     In addition, the EnPro Defendants breached their duties to remediate and to protect off-site property owners by failing to undertake any remediation of the contamination which exists on the Plaintiffs' properties.

### Claim for Nuisance

56.     The EnPro Defendants created, or allowed to continue, a condition that is injurious to the property owned by the Plaintiffs and which has fundamentally interfered with the Plaintiffs' right to use and enjoy their properties.   Specifically, Defendants' acts and/or omissions, as described herein, have resulted in the migration of hazardous contamination from the Holley plant onto the properties owned by the Plaintiffs and/or increased the concentration of such contamination which has impacted the Plaintiffs' properties.   Such migration of hazardous substances has contaminated the soil on Plaintiffs' properties, has caused Plaintiffs annoyance, discomfort and inconvenience, and has substantially interfered with Plaintiffs' use and enjoyment of their properties.

### Trespass

57.     The EnPro Defendants have caused hazardous substances, *via* the migration of groundwater contamination from the premises of the Holley plant, to trespass upon the properties owned by the Plaintiffs, and/or such Defendants have caused such trespasses to continue by failing to appropriate and adequately remediate the contamination existing on the Holley plant premises.   Such trespasses are continuing in nature and re-occur upon Plaintiffs' properties as contamination continues to flow *via* groundwater migration from the Holley plant premises. The contaminants which the Defendants caused to trespass on Plaintiffs' properties include TCE

and any chemical degradation products related to TCE, including but not limited to, vinyl chloride.

58.     The continuing trespasses caused by the Defendants were committed in a grossly negligent, reckless and intentional manner, and the same violated, and continue to violate, the Plaintiffs' rights to the exclusive use and possession of their respective properties.

### Claim for Strict or Absolute Liability

59.     Pursuant to Mississippi law, one who causes or contributed to a physical invasion of the land of another is strictly or absolutely liable for all harm arising therefrom.

60.     The EnPro Defendants put in motion the agency, *i.e.,* contamination, which has physically invaded the Plaintiffs' properties, and the EnPro Defendants contributed to such physical invasion by failing to appropriately and adequately remediate the contamination on the premises of the Holley plant, which continues to invade the Plaintiffs' properties.

61.     The physical invasion which the Defendants caused or contributed to affects the physical condition of the Plaintiffs' properties and, by definition, constitutes a substantial and significant interference with Plaintiffs' rights.

62.     The EnPro Defendants are strictly and absolutely liable for all harm to Plaintiffs' properties caused by the physical invasions of contamination which they created or failed to prevent.

### Fraud and/or Fraudulent Concealment

63.     The EnPro Defendants fraudulently concealed the continuing existence of contamination in the soil on the Holley plant premises by fraudulently representing to the State of Mississippi that the scope of work approved for soil remediation of such premises had been

followed.   When making such misrepresentation, the EnPro Defendants knew that the contaminated soil on the plant premises had not been excavated to a depth of fourteen (14) feet and that all of the contaminated soil had not been heat treated, but the EnPro Defendants made such misrepresentations nonetheless.   Plaintiffs have standing to assert claims for fraud and/or fraudulent concealment against the EnPro Defendants since the remediation which the Defendants undertook, and performed in a fraudulent manner, was required by the MDEQ of the State of Mississippi for the benefit of all Mississippi citizens and governmental entities which might be impacted by the contamination.

**Claim for Intentional and/or Negligent Infliction of Emotional Distress**

64.     The EnPro Defendants had actual knowledge of the hazardous nature of TCE and of the TCE contamination on the Holley plant premises; had actual knowledge of the danger and harm which TCE and TCE contamination presented to human health, animal life, and the environment; had actual knowledge that TCE-contaminated soil would contaminate the groundwater, and that such groundwater would flow through and contaminate the soil on off-site properties; and had actual knowledge that their failure to appropriate and adequately remediate the soil on the Holley plant premises would contaminate the downgradient environment "for decades."

65.     Notwithstanding such knowledge, and the high probability that their acts and failures to act would harm the Plaintiffs, the EnPro Defendants released and discharged, in a grossly negligent, reckless and intentional manner, the hazardous substance known as TCE into the environment on the Holley plant premises; the EnPro Defendants failed to appropriate and

25

adequately remediate the soil on the Holley plant premises by allowing execution of the soil remediation in a fraudulent manner that deviated from the required scope of work; and the EnPro Defendants fraudulently represented to the State of Mississippi that the soil remediation on the Holley plant premises had been conducted in accordance with the required scope of work. At the time of such acts and/or omissions, the Defendants knew and recognized that such violations and breaches would inflict harm and damage on the properties owned by off-site owners, including the Plaintiffs. Further, the Defendants knew that such conduct on their part would cause the Plaintiffs to experience severe emotional distress.

66.     Such conduct on the part of the Defendants was malicious, intentional, outrageous, evoked revulsion, and rose to the level of an intentional infliction of emotional distress.

67.     At a minimum, or in the alternative, Defendants' conduct toward Plaintiffs was negligent or grossly negligent and constitutes a negligent infliction of emotional distress.

68.     Regardless of whether their conduct was negligent or intentional, it was reasonably foreseeable to the Defendants that their conduct toward the Plaintiffs would cause the Plaintiffs to suffer severe emotional distress. Plaintiffs are therefore entitled to recover from the Defendants all damages they have sustained for emotional distress as a proximate result of Defendants' conduct, including but not limited to, any distress pertinent to Plaintiffs' concern over the value, use, or limitations of use of their respective properties.

**CERCLA Savings Provision**

69.     Plaintiffs do not plead any federal cause of action or claim for substantive relief. Only for procedural purposes relating to the statute of limitations, and to any extent necessary,

26

Plaintiffs invoke the procedural benefit of the savings provisions set forth in 42 U.S.C. § 9658 (a)(1), of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), because Plaintiffs assert claims under State law for injuries or damages, including injury and damage to property, caused or contributed to by exposure to hazardous substances, pollutants, or contaminants (such as TCE and its degradation products) released into the environment by the Defendants from a facility owned, operated, and/or controlled by the Defendants, *i.e.,* the Holley plant in Water Valley, Yalobusha County, Mississippi.

### Damages Sustained

70.    The Plaintiffs are entitled to recover damages in amounts to be determined by a jury at trial for the injuries and harm they have sustained, including but not limited to, damages representing the diminution in value of their properties; damages for harm to their properties, impairment of their use and enjoyment of their properties, and special damages based on their claims for nuisance, trespass, and strict or absolute liability; damages for the intentional and/or negligent infliction of emotional distress; and punitive damages and attorneys' fees which the Plaintiffs have or will incur in the prosecution of this action.

71.    For purposes of Plaintiffs' claims of diminution of value of their respective properties, the value of their respective properties is diminished by the cost to remediate the contaminated soil which exists on the same, which soil remediation will likely cost an approximate amount of $102,941.00 per acre.

72.    For purposes of their claims of nuisance, trespass and strict or absolute liability, Plaintiffs reserve the right to seek and recover any special damages which they may sustain or incur, in the event of any occurrence of vapor intrusion, for the cost of monitoring the inhabitable

27

or occupied buildings or structures on their properties for TCE vapor intrusion and the cost of installing, maintaining and servicing equipment or systems to ventilate TCE vapor from the soil on Plaintiffs' properties and prevent the same from penetrating any inhabitable or occupied buildings or structures thereon.

## Damages Sought

73.     The acts and omissions of the Defendants have caused, have contributed to, and continue to cause harm and damage to Plaintiffs, and Plaintiffs are entitled to recover and hereby seek recovery of the following damages from the Defendants:

a.      Damages for loss of, or diminution in, the value of Plaintiffs' respective properties;

b.      In the event of any occurrence of vapor intrusion, special damages for the cost of monitoring the Plaintiffs' respective properties for TCE vapor and for the installation, maintenance and servicing of equipment and systems to evacuate or ventilate TCE soil vapor;

c.      Damages for the Plaintiffs' impairment of their right to use and enjoyment of their properties, and for violation of their right to exclusive use and possession of their properties;

d.      Emotional distress;

e.      Pre-judgment and/or post-judgment interest, as allowed by law and/or authorized by the Court;

f.      Punitive damages against each of the Defendants for their malicious, reckless, wanton, outrageous and/or grossly negligent conduct; and

g.      An award of attorneys' fees to Plaintiffs, in the event of an award of punitive damages.

28

**Ad Damnum**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Yalobusha County, Mississippi, by and through The Board of Supervisors of Yalobusha County, Mississippi, and The Board of Trustees of Yalobusha General Hospital of Yalobusha County, Mississippi, bring this action against the Defendants, EnPro Industries, Inc.; EnPro Holdings, Inc.; and Goodrich Corporation and demand judgment against the Defendants for all legal relief sought herein, including compensatory damages, special damages, punitive damages, attorneys' fees, and interests and costs of Court, all in an amount in excess of the jurisdictional limits of the United States District Courts for the State of Mississippi.

**Demand for Jury Trial**

Plaintiffs hereby demand trial by jury on all issues of fact presented in this action.

RESPECTFULLY SUBMITTED:

By:    */s/ William Liston III*

William Liston III (MS Bar #8482)
william@listondeas.com
W. Lawrence Deas (MS Bar #100227)
lawrence@listondeas.com
LISTON & DEAS, PLLC
605 Crescent Blvd., Suite 200
Ridgeland, Mississippi 39157
Tel. (601) 981-1636
Fax. (601) 982-0371

Marquette Wolf (MS Bar #104996)
mwolf@tedlyon.com
TED B. LYON & ASSOCIATES
18601 LBJ Freeway, Suite 525
Mesquite, Texas 75150
Tel. (972) 279-6571
Fax. (972) 279-3021

John J. Crow, Jr. (MS Bar #7901)
john.crow@duckwood.net
Daniel M. Martin (MS Bar #102940)
daniel.martin@duckwood.net
J. Shannon Crow (MS Bar #104797)
shannon.crow@duckwood.net
CrowMartin, PLLC
203 Wagner Street
Water Valley, Mississippi 38965
Tel. (662) 473-1870
Fax. (662) 473-2030

J. Keith Treadway, (MS Bar # 9886)
keith.treadway@treadwaylawfirm.com
Treadway Law Firm
Post Office Box 613
Olive Branch, MS38654-0513
Tel. (662) 895-8170
Fax. (662) 895-8169

ATTORNEYS FOR PLAINTIFFS

**Certificate of Service**

I, William Liston III, an attorney of record for Plaintiffs, hereby certify that I have filed the above and foregoing document with the Clerk of this Court *via* the Court's ECF filing system, thereby serving this filing on all counsel of record in this matter.

This the 27th day of September, 2019.

*/s/ William Liston III*
William Liston III

30